STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-05-35

BLETHEN MAINE NEWPAPERS,
INC., d/b/a PORTLAND PRESS
HERALD, MAINE SUNDAY
TELEGRAM,

   Plaintiff/Appellant

  v.

STATE OF MAINE and
OFFICE OF CHIEF
MEDICAL EXAMINER,

   Defendants/Appellees

JUL 20

**DECISION ON APPEAL**

This matter comes before the court on appeal by Blethen Maine Newspapers ("Newspapers") pursuant to the Maine Freedom of Access Act ("FOAA" or "Act"), 1 M.R.S.A. § 409(1). The appeal is from a denial by the appellees of a request by the Newspapers to obtain unredacted copies of consent forms for the release of organs and tissue by the Office of the Chief Medical Examiner ("OCME"). After a *de novo* review of the application, the court finds that these records are confidential and may not be disseminated.

## Background

The present dispute over access to unredacted copies of consent forms comes before the court on a stipulated set of facts, summarized as follows:

The OCME is an office within the Department of the Attorney General, established pursuant to 22 M.R.S.A. § 3022(1). The OCME's primary responsibility is to investigate and determine the cause of certain deaths, which often requires autopsies involving the extraction and examination of internal organs, including the brain.

The Stanley Medical Research Institute ("Institute") is a nonprofit medical research institution specializing in treatment and cures for major mental illnesses. Between 1999 and 2003, the Institute sought to obtain samples of brain and other bodily tissues from decedents autopsied by the OCME. As part of this program, an agent of the Institute would contact the decedent's next-of-kin by telephone, and document the next-of-kin's consent to donate tissues and organs. This form was typically filled out by the agent and was signed by the agent and a witness. After the agent notified OCME of the consent, the brain and other tissue or organs would be shipped to the Institute, so long as such donation did not interfer with OCME's examination. As of July 2004, the OCME had copies of these consent forms in its files for approximately two thirds of the organ donations to the Institute.

In the Summer of 2004, the appellee Newspspers, through one of their staff reporters, began research for articles on the relationship between the Institute and the OCME. By letter dated July 20, 2004, the reporter filed a FOAA request for "all tissue donation consent forms that were filed with the State prior to June 30, 2003, by the Stanley Medical Research Institute or [its agent]." In response, the State did provide copies of the documents, but only redacted copies of the first page of the consent forms. The redacted information included the identities of the decedents and their next-of-kin.

On July 26, 2004, the reporter filed another FOAA request with the OCME, which this time responded with a denial.

In October of 2004, staff of the Attorney General's Office apart from the OCME initiated a criminal investigation into the donation of brain tissue to the Institute. During the course of this investigation, the Attorney General's Office sought and received from the Institute copies of all (or substantially all) of the approximately 100 consent forms relating to the organ harvesting activities. In January of 2005, the

reporter filed another request for the consent forms, which again was denied by the Attorney General's Office on behalf of the State and the OCME. This denial led to the present appeal.[1]

## Discussion

The issue before the court is whether copies of the various consent forms should be provided to the Newspapers in an unredacted form,[2] or whether they are confidential and not subject to the FOAA.

Documents in the possession of the OCME are governed by the provisions of the Medical Examiner Act. 22 M.R.S.A. §§ 3021-3035. The Chief Medical Examiner is named as the custodian of these records and it provides that copies may be obtained unless the records are declared confidential in 22 M.R.S.A. § 3022(8). The consent forms at issue do not appear to be among those documents specifically declared to be confidential, but fall within another classification known as "report documents", as set forth in section 3022(14). According to the statute:

> Report documents, as defined in section 3035, subsection 2, in the possession or custody of a medical examiner or the Office of the Chief Medical Examiner constitute investigative information. Release and inspection are governed by Title 16, section 614. Release and inspection are also contingent upon the person's request specifying a specific decedent or decedents and the payment of any required fee under section 3035.

According to section 3035, "report documents" include the written report in a medical examiner case, report of findings of an autopsy, and "associated reports, including, but

---

[1] Although the previous July 2004 requests are mentioned for background purposes, it is only the January 2005 request and denial which are properly on appeal. The earlier requests and denials were not appealed within the time for doing so.

[2] There are potentially two sets of documents, the 65 or so consent forms which were in the OCME's possession in July 2004 and which have been provided in redacted form to the Newspapers, and a second set of approximately 100 consent forms provided to the Attorney General's Office by the Institute. It is not entirely clear whether the first set of forms remains at OCME or whether they were turned over to the Attorney General who now holds both sets. The answer to the final question is the same in either case though the road to get there is different.

not limited to, toxicological reports, reports of forensic experts, reports of consultants and *reports relating to harvested organs.*" 22 M.R.S.A. § 3035(2), emphasis provided. As presented to the OCME by the agent of the Institute, these consent forms fall within the category of associated reports relating to harvested organs. Therefore, dissemination is specifically controlled by 16 M.R.S.A. § 614.

With regard to those consent forms which are now in the possession of the other portions of the Department of the Attorney General, dissemination of those forms is also controlled by section 614 since they have been "compiled in the course of investigation of known or suspected crimes,". 16 M.R.S.A. § 611(8).[3]

Pursuant to section 614, reports or records prepared by or kept in the custody of certain law enforcement agencies:

> Are confidential and may not be disseminated if there is a reasonable possibility that public release or inspection of the reports or records would:
> (A)     Interfere with law enforcement proceedings;
> ...
> (C)     Constitute an unwarranted invasion of personal privacy;

Both categories apply to the consent forms at issue if unredacted.[4]

There is a stipulation of the parties that a criminal investigation was started in October 2004 and that the Institute's copies of the consent forms were obtained during that investigation. It is also stipulated that the state criminal investigation remains ongoing, along with a federal criminal investigation by the United States Attorney for

---

[3] The OCME is not among those law enforcement agencies specifically listed in section 614(1) as being an agency in whose custody documents would qualify. This is probably because OCME would automatically qualify as being part of the Department of the Attorney General, which is on the list.

[4] There may be some question concerning the status of the original consent forms in the custody of the OCME, which were released in a redacted form pursuant to the Newspapers' July 2004 request. At that time, the Attorney General's investigation had not yet begun and there might have been an issue as to whether release would interfere with law enforcement proceedings since the forms were not "compiled" in the course of an investigation. That point would have been well taken had it been raised on an appeal in 2004. See *John Doe Agency v. John Doe Corporation,* 493 U.S. 146; 110 S.Ct. 471; 107 L.Ed.2d 462 (1989). However, it is the January 2005 denial that is on appeal, not the July 2004 actions, and the Attorney General's investigation was initiated in the interim. Therefore, the issue no longer exists.

the District of Maine. Dissemination of the names of next-of-kin who gave their consent to organ harvesting at least could have a chilling effect on the sharing of information by prospective confidential informants and witnesses, thereby creating interference with the investigations by the state and federal authorities. For that reason, the exception in section 614(1)(A) is applicable at the present time.

To determine whether the second basis for exception – unwarranted invasion of personal privacy – applies, the court must use a balancing test. See *Blethen Maine Newspapers, Inc. v. State of Maine*, 2005 ME 56, ____ A.2d ____. Thus, the court must consider first the personal privacy interest, second, the public interest supporting disclosure and, third, a balancing of these private and public interests.

The personal privacy interests in question are primarily those of the individuals whose names appear on the consent form and their families. One name is that of the decedent, the other is the next of kin. Although the *Blethen* case above did not resolve the issue of whether reputational interests of decedents survive their demise, it is clear that the privacy interest of living family members may survive. The Supreme Judicial Court quoted the United States Supreme Court on this point as follows:

> [W]e think it proper to conclude from Congress's use of the term 'personal privacy' that it intended to permit family members to assert their own privacy rights against public intrusions long deemed impermissible under the common law and in our cultural traditions.

*National Archives & Records Administration v. Favish*, 541 U.S. 157, 167 (2004). No doubt every day thousands of families and individuals donate selected organs from deceased relatives, or decedents have volunteered such donations, so that others can live fuller and longer lives or for the advancement of science and medicine. Some of this philanthropy becomes publicly recognized, but much more remains private due to the sensitive nature of the gifts. Public recognition becomes a particularly sensitive issue

when the organ involved is a person's brain, to which certain cultural attributes and traditions attach. The "harvesting" of a brain, even if for the purest and most logical of medical and scientific purposes, runs the risk of comparison to more ghoulish caricatures of other "harvesting" if it became a matter of public knowledge and comment. Moreover, unlike the personal privacy interest of families of the long deceased priests in the other recent *Blethen* case, here the death and decision to consent to harvesting of organs are quite recent and the emotional scars still tender. All of this leads the court to conclude that there is a substantial personal privacy interest arguing for confidentiality of the unredacted versions of the consent forms.

On the other side of the balance is the public policy interest. The Newspapers argue that the public interest is in the functioning of state offices and officials in the form of the OCME. More specifically, the Newspapers suggest that some organs may have been harvested without the proper consent by next of kin. Apparently law enforcement officials may share similar concerns in light of their investigation. However, after acknowledging the public interest, it is difficult to see how the specific information sought here would advance that interest. If the goal is to discover whether any decedents had organs harvested *without* proper consent, that goal is hardly advanced by making public a list of decedents and next of kin where the organ harvest was done *with* the necessary consent. The Newspapers were asked this point at oral argument without a satisfactory reply. Therefore, in this balance, the personal privacy interests outweigh the public disclosure interest, and the unredacted forms should remain confidential.

Although the Newspapers may not have access to unredacted copies of the consent forms, this does not mean that they are without means to pursue their goal. If the Newspapers have more specific concerns about a consent to harvest for a particular

individual, they may be able to make a specific request under 22 M.R.S.A. § 3022(14) to find out whether or not a consent form for that individual exists, even though the document itself, if any, would remain confidential. This approach would seem to more realistically advance the Newspapers' goal without invading personal privacy.

For both the reasons stated above, the court concludes that the consent forms at issue are made confidential pursuant to 16 M.R.S.A. § 614(1)(A) and (C), and thus are confidential and may not be disseminated. The entry will be:

Appeal DENIED.

Dated: May **13**, 2005

S. Kirk Studstrup
Justice, Superior Court

BLETHEN MAINE NEWSPAPERS, INC. - PLAINTIFF
390 CONGRESS STREET PO BOX 1460
PORTLAND ME 04104
Attorney for: BLETHEN MAINE NEWSPAPERS, INC.

PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546

Attorney for: BLETHEN MAINE NEWSPAPERS, INC.
JONATHAN PIPER  - RETAINED 01/31/2005
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546


vs
STATE OF MAINE - DEFENDANT
6 STATE HOUSE STATION
AUGUSTA ME 04333
Attorney for: STATE OF MAINE
PAUL STERN  - RETAINED 02/01/2005
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

Attorney for: STATE OF MAINE
THOMAS A KNOWLTON  - RETAINED
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

OFFICE OF CHIEF MEDICAL EXAMINER - DEFENDANT
37 STATE HOUSE STATION
AUGUSTA ME 04333
Attorney for: OFFICE OF CHIEF MEDICAL EXAMINER
PAUL STERN  - RETAINED 02/01/2005
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2005-00035

**DOCKET RECORD**

Filing Document: COMPLAINT          Minor Case Type: FREEDOM OF ACCESS
Filing Date: 01/31/2005

## Docket Events:
02/02/2005 FILING DOCUMENT - COMPLAINT FILED ON 01/31/2005
        Plaintiff's Attorney:   SIGMUND D SCHUTZ
        COMPLAINT/APPEAL FROM UNLAWFUL DENIAL OF ACCESS TO PUBLIC RECORDS UNDER THE FREEDOM OF
        ACCESS ACT WITH EXHIBITS 1, 2 & 3, FILED.

02/02/2005 Party(s):  BLETHEN MAINE NEWSPAPERS, INC.
        ATTORNEY - RETAINED ENTERED ON 01/31/2005
        Plaintiff's Attorney: SIGMUND D SCHUTZ