**IN DEFENSE OF ANIMALS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.**

**Civil Action No. 02–557 (RWR).**

United States District Court, District of Columbia.

Nov. 21, 2008.

Eric Robert Glitzenstein, Katherine A. Meyer, Delcianna J. Winders, Meyer Glitzenstein & Crystal, Kimberly Denise Ockene, Humane Society of the United States, Washington, DC, for Plaintiff.

Allan Blutstein Anne Davis Work U.S. Department of Justice Office of Information and Privacy Alex Menendez, Richard T. Rossier, McLeod, Watkinson & Miller, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD W. ROBERTS, District Judge.

Plaintiff In Defense of Animals ("IDA"), an animal rights advocacy group, brings this action under the Freedom of Information Act ("FOIA") against defendant United States Department of Agriculture ("USDA"), seeking access to records withheld under FOIA Exemption 4. IDA has filed two motions in limine to exclude at trial the proposed expert testimony of Ricardo Solano, Jr. and several trial exhibits offered by the USDA and intervenor-defendant Life Sciences Research, Inc. ("LSR"). Because Solano's proposed testimony and related exhibits are not probative of any material issue in dispute, IDA's motions in limine to exclude Solano's testimony and related exhibits will be granted. Because the declarations of Hugh Gilmore and Michael Caulfield as freestanding exhibits are inadmissible hearsay, IDA's motion in limine to exclude them will be granted.

## BACKGROUND

A more detailed history of this case is available in an earlier opinion, *In Defense of Animals v. USDA,* 501 F.Supp.2d 1 (D.D.C.2007). IDA brings this FOIA action seeking documents from the USDA concerning the USDA's investigation of Huntingdon Life Sciences ("HLS"), a subsidiary of LSR, for violations of the Animal Welfare Act. LSR intervened as a defendant to protect its interest in the documents at issue which currently number 1,017 pages, 503 of which are being withheld in full and the rest withheld in part. *Id.* at 4. The government has withheld these documents under FOIA Exemption 4, which prevents disclosure of "trade se-

crets and commercial or financial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4). Earlier, the parties' cross-motions for summary judgment were denied because there is a disputed material fact as to whether disclosure of the withheld documents would cause HLS substantial competitive harm. *In Def. of Animals,* 501 F.Supp.2d at 8. In anticipation of trial on this issue, IDA has filed two motions in limine to exclude the proposed expert testimony of Ricardo Solano, Jr. and several of defendants' proposed trial exhibits.

## DISCUSSION

FOIA Exemption 4 prevents disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4). The parties have previously agreed that trade secret protection does not apply in this case and that the information withheld under Exemption 4 is "commercial" and "obtained from a person." *In Def. of Animals,* 501 F.Supp.2d at 6. Accordingly, the remaining question is whether the withheld commercial information is "confidential."[1]

█ In the District of Columbia Circuit, commercial information is "confidential" under Exemption 4 if "disclosure would either '(1) . . . impair the Government's ability to obtain necessary information in the future; or (2) . . . cause substantial harm to the competitive position of the person from whom it was obtained.'" *Pub. Citizen Health Research Group v. FDA,* 704 F.2d 1280, 1290–91 (D.C.Cir. 1983) (alteration in original) (quoting *Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974) (footnote omitted)). Because the information with-

---

1. The government does not contend such information is "privileged." (*See* Def.'s Re-   newed Mot. for Summ. J. at 4.)

held under Exemption 4 was submitted involuntarily to the USDA, the USDA does not contend that disclosure would impair its ability to obtain necessary information in the future. *See In Def. of Animals,* 501 F.Supp.2d at 6. (Def.'s Mem. at 6–7.) Thus, the critical issue for trial is whether disclosure of the withheld information would cause substantial competitive harm to HLS.

■■■ FOIA exemptions "must be narrowly construed" and "the burden is on the agency to sustain its action." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989) (internal quotation marks omitted). While "the court need not conduct a sophisticated economic analysis of the likely effects of disclosure, [c]onclusory and generalized allegations of substantial competitive harm . . . cannot support an agency's decision to withhold requested documents." *Pub. Citizen Health Research Group,* 704 F.2d at 1291 (internal citation omitted). The agency need not prove "actual competitive harm" but must show (1) actual competition and (2) the "likelihood of substantial competitive injury." *Id.* The type of competitive injury covered under Exemption 4 is limited to "that which may flow from *competitors'* use of the released information, not from any use made by the public at large or customers." *Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury,* 981 F.Supp. 20, 23 (D.D.C.1997) (emphasis in original) (rejecting the Bureau of Alcohol, Tobacco, and Firearms' argument that releasing reports would subject licensed gun dealers to "unwarranted criticism and harassment" as irrelevant to the competitive harm analysis); *see Worthington Compressors, Inc. v. Costle,* 662 F.2d 45, 51–52 (D.C.Cir.1981) (inquiring "whether release of the requested information, given its commercial value to competitors and the cost of acquiring it through other means," will create a "windfall for competitors" that puts the disclos-

ing entity at a commercial disadvantage). Further, the court of appeals has

> emphasize[d] that "[t]he important point for competitive harm in the FOIA context . . . is that it be limited to harm flowing from the affirmative use of proprietary information *by competitors.* Competitive harm should not be taken to mean simply any injury to competitive position, as might flow from customer or employee disgruntlement or from the embarrassing publicity attendant upon public revelations concerning, for example, illegal or unethical payments to government officials or violations of civil rights, environmental or safety laws."

*Pub. Citizen Health Research Group,* 704 F.2d at 1291 n. 30 (quoting Mark Q. Connelly, *Secrets and Smokescreens: A Legal and Economic Analysis of Government Disclosures of Business Data,* 1981 Wis. L.Rev. 207, 235–36 (emphasis and alteration in original)). For example, the court of appeals has rejected a party's claim of reputational harm flowing from the release of information that would reveal that the corporation bribed a foreign government as "simply irrelevant" to the competitive harm inquiry. *See Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 341 (D.C.Cir. 1989) (stating that the agency's role was "not to assess the overall damage, regardless of its nature, . . . but rather to determine whether any non-public information contained in those documents [was] *competitively* sensitive" (emphasis in original)).

## I. EXPERT TESTIMONY OF RICARDO SOLANO, JR.

■■■ LSR proposes to offer the testimony of Ricardo Solano, Jr. as an expert on "the tactics of animal rights organizations—including their efforts to enlist, direct, and incite animal rights activists to engage in any activity meant to harm the business of HLS in any manner available." (LSR's Opp'n to Pl.'s Mot. to Exclude

Test. at 2 (internal quotation omitted).) Under Federal Rule of Evidence 702, an expert witness may testify if his testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Rule 702 requires that expert testimony be both reliable and "relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Thus, expert testimony must be excluded as irrelevant "if it has no bearing on any issue in the case[.]" *Keys v. Wash. Metro. Area Transit Auth.*, 577 F.Supp.2d 283, 285 (D.D.C.2008) (citing *Halcomb v. Wash. Metro. Area Transit Auth.*, 526 F.Supp.2d 24, 31 (D.D.C.2007)).

As is recounted above, the only issue for trial is whether the information withheld by the USDA, if released, would cause competitive harm to HLS. Because competitive harm is narrowly limited to the harm arising from a competitor's use of the information for a commercial advantage, Solano's proposed testimony is irrelevant. The animal rights organizations in which Solano claims expertise are not commercial competitors. While the tactics he describes in his expert report may cause harm to HLS, it is not harm caused by commercially competitive behavior. Rather, the harm Mr. Solano describes is akin to the reputational harm caused by negative publicity that the court of appeals has made clear is irrelevant to the competitive harm inquiry under Exemption 4. *See Occidental Petroleum Corp.*, 873 F.2d at 341; *Pub. Citizen Health Research Group*, 704 F.2d at 1291 n. 30. Thus, under *Daubert*, Solano's testimony will be excluded as irrelevant.

## II. TRIAL EXHIBITS

IDA moves to exclude the following exhibits on the grounds that they are (1) inadmissible hearsay and (2) irrelevant because they focus on the tactics of animal rights groups:

| Ex. No. | Description |
| --- | --- |
| 10.A | Chris Mondies, *A Harsh Animal Rights Campaign Targets N.J. Firm, Workers*, The Philadelphia Inquirer, July 14, 2002. |
| 10.B | IDA, Pamphlet, *Huntingdon Life Sciences Animal Killers!  Close Them Down!* |
| 10.C | Maria Burke, *Animal Rights Extremism, A UK Export?*, BioPeople 36–41 (Summer 2001). |
| 10.D | Al Baker, *Environmental Groups Claim to Have Vandalized Banks*, N.Y. Times, June 14, 2001. |
| 10.E | IDA, Notes from the Field, Week of July 19, 2000 (website printout) |
| 10.G | *Stephens Group, Inc. et al. v. Voices for Animals et al.*, Civil Action No. 00:5518, Stipulated Permanent Injunction and Order (2001). |
| 10.H | Bill Burke, *Terrorism Accusations Raise Hackles at PETA*, The Virginian–Pilot, June 22, 2002. |
| 10.L | Letter from Elliot M. Katz, President of IDA. |
| 10.M | IDA Website Screenshot (site last updated Mar. 12, 2003). |
| 10.O | IDA Website, Huntingdon Life Sciences:  Running for Its Life |
| 10.P | Marc Davis, *Judge Criticizes PETA's Methods, Bars Group from Using Undercover Tapes*, The Virginian–Pilot, July 30, 1997. |
| 10.Q | John–Henry Doucette, *Latest Undercover Probe Renews Attacks on PETA's Methods*, The Virginian–Pilot, June 16, 1997. |

10.S    Stop Huntingdon Animal Cruetly Website, HLS & Covance Infiltrated, http://www. shac.net/TARGETS/customers/infiltration/infiltratedfrontpage.html (printout date Mar. 18, 2003).

■   (*See* Pl.'s Mot. to Exclude Tr. Exs. at 3–7.) "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. From a review of each of the proposed exhibits, it is clear that they focus exclusively on the actions of animal rights groups who do not compete commercially with HLS. For the reasons discussed above, they are irrelevant to the issue of competitive harm under Exemption 4 and will be excluded under Rule 402.

## III. DECLARATIONS OF HUGH GILMORE AND MICHAEL CAULFIELD

IDA objects to use at trial of the Second Declaration of Hugh Gilmore (Ex. 9) and Declaration of Michael Caulfield (Ex. 10.T) on the grounds that such declarations are inadmissible hearsay and "include[ ] impermissible lay opinions that are not based on [the declarant's] personal knowledge." (Pl.'s Mot. to Exclude Tr. Exs. at 3, 7–8 (citing Fed.R.Evid. 701, 801, 802).) On their face, these declarations are inadmissible hearsay because they are out-of-court statements by declarants offered for the truth of the matter asserted. *See* Fed. R.Evid. 801, 802. Defendants have made no showing that either declaration is non-hearsay or that either declaration falls within one of the hearsay exceptions under Rule 803 or the residual exception to the rule against hearsay under Rule 807. Nor have defendants proffered any other basis for the admission of the declarations. Accordingly, IDA's motion to exclude the declarations of Gilmore and Caulfield as freestanding, unsponsored exhibits will be granted.

### CONCLUSION AND ORDER

Because the proposed expert testimony of Ricardo Solano, Jr. and defendants' proposed exhibits 10.A–E, G, H, L, M, O–Q, and S focus exclusively on the tactics of animal rights organizations, which are not HLS's commercial competitors, the proposed testimony and exhibits will be excluded as irrelevant under Rule 402. Further, because the declarations of Gilmore and Caulfield are hearsay and the defendants have made no showing that the declarations are otherwise admissible as freestanding, unsponsored exhibits, these declarations will be excluded. Accordingly, it is hereby

ORDERED that IDA's motion [80] to exclude the testimony of Ricardo Solano, Jr. be, and hereby is, GRANTED. It is further

ORDERED that IDA's motion [88] to exclude defendants' proposed trial exhibits be, and hereby is, GRANTED. Defendants' proposed exhibits 10.A–E, G, H, L, M, O–Q, and S, and the declarations of Gilmore and Caulfield are excluded.