STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. AP-13-6
                                                  RAc - 3/9/2013

MAINETODAY MEDIA, INC.,
        Plaintiff/Appellant

                                    STATE OF MAINE
                                    Cumberland, ss, Clerk's Office
v.                                                              ORDER
                                          MAR 00 2013

                                    RECEIVED
STATE OF MAINE,
        Defendant/Appellee


        Pursuant to Maine Rule of Civil Procedure 80C and 1 M.R.S.A. § 409 of the

Freedom of Access Act, Plaintiff MaineToday Media appeals the decision of Defendant

State of Maine to deny its request for access to 911 call transcripts related to the James

Pak shooting in Biddeford on December 29, 2012.

**Background**

        The parties submitted an agreed statement of facts. In an indictment dated

February 5, 2013, James Pak was charged with two counts of murder in connection with

the shooting deaths of Derrick Thompson, 19, and his girlfriend Alivia Welch, 18, on

December 29, 2012. He was also charged with attempted murder and elevated

aggravated assault with a firearm in connection with the shooting of Derrick's mother

Susan Johnson on the same day. Mr. Pak was the landlord of Derrick, Alivia, and Susan

at 17-A Sokokis Road in Biddeford, where the alleged crimes took place.

        On December 29, 2012, at approximately 6:07 pm, prior to being shot by Mr. Pak,

Derrick called 911 concerning Mr. Pak's behavior. One or more Biddeford police

officers responded, spoke with Derrick and Mr. Pak, and left the scene.

1

At approximately 6:54 the same evening, three minutes after police officers had left the scene and after she had been shot, Susan placed another 911 call.

At approximately 7:02 pm, Armit Pak, the wife of Mr. Pak, placed a 911 call. All three calls were recorded and transcripts exist.

On January 2, 2013, Portland Press Herald[1] reporter David Hench requested a copy of the transcript of the 911 call placed by Derrick Thompson. The Maine State Police and Department of Public Safety denied that request and a subsequent request to reconsider, citing the "intelligence and investigative information" exception to the Freedom of Access Act. 16 M.R.S.A. § 614. The Attorney General's Office indicated via email that it concurred in that position.

On January 11, 2013, counsel for MaineToday Media (MTM) made a formal request for all 911 transcripts in connection with all active homicide investigations and ongoing homicide prosecutions,[2] including the three calls related to Mr. Pak placed on December 29. The Attorney General's office denied the request on the same grounds. The State's position is that in any active homicide investigation or prosecution, 911 call recordings and transcripts constitute "intelligence and investigative information" subject to § 614. MTM timely appealed the denial on January 22, 2013.

**Discussion**

On appeal, a party aggrieved by a FOAA denial is entitled to de novo review in the Superior Court. 1 M.R.S.A. § 409(1). Thus, the Court eschews the ordinary 80C

---

[1] Defendant MaineToday Media publishes the Portland Press Herald.

[2] However, MTM has agreed for purposes of the appeal that the State need not actually search for and identify all 911 recordings/transcripts related to all ongoing investigations and prosecutions.

standard of review contained in the Administrative Procedure Act. 5 M.R.S.A. §
11007(4)(C).

The transcripts in question are "public records" as defined by the Freedom of
Access Act. 1 M.R.S.A. § 402(3). The issue is whether they are specifically exempted
from disclosure by statute. § 408-A (*"Except as otherwise provided by statute*, a person
has the right to inspect and copy any public record . . . ") (emphasis added). Two statutes
are relevant to the inquiry: (1) The Emergency Services Communications Act, 25
M.R.S.A. § 2929, and (2) the Criminal History Record Information Act, 16 M.R.S.A. §
614.

The Emergency Services Communications Act provides that "confidential
information" may not be disclosed in any manner. 25 M.R.S.A. § 2929(2). Among
other limited types of information, "confidential information" includes the "name,
address and telephone number of a caller to a public safety answering point." *Id.* §
2929(1)(C). Only those "portions" of the records containing "confidential information"
may be withheld. *Id.* § 2929(3). "Other information that appears in those records and
other records, *except information or records declared to be confidential under other law*,
is subject to disclosure pursuant to Title 1, section 408-A." *Id.* (emphasis added). This
framework applies to information contained in 911 transcripts; the actual audio recording
is confidential in its entirety. *Id.* § 2929(4).

In this case, the bulk of the information contained in the three 911 calls is subject
to disclosure under 25 M.R.S.A. § 2929. Only the name, address, and telephone numbers
of the callers must be redacted from the three transcripts in question.[3] However, the

---

[3] The Court has listened to the audio and read the transcripts. It does not appear that any

remaining information is only available to the extent it is not "declared to be confidential under other law." *Id.* § 2929(3). Contrary to MTM's position that the inquiry begins and ends with § 2929, the Court finds that the Emergency Services Communications Act and the Criminal History Record Information Act are independently available to limit disclosure of otherwise public information.

Under the latter law, "[r]eports or records that contain intelligence and investigative information and that are . . . kept in the custody of . . . the Department of the Attorney General . . . are confidential and may not be disseminated if there is a reasonable possibility that public release or inspection of the records would:

(A) Interfere with law enforcement proceedings;
(B) Result in public dissemination of prejudicial information concerning an accused person or concerning the prosecution's evidence that will interfere with the ability of a court to impanel an impartial jury; [or]
(C) Constitute an unwarranted invasion of personal privacy.

16 M.R.S.A. § 614(1)(A)-(C).

Next, "intelligence and investigative information" is defined as follows:

information collected by criminal justice agencies or at the direction of criminal justice agencies in an effort to anticipate, prevent or monitor possible criminal activity, including operation plans of the collecting agency or another agency, *or* information *compiled* in the course of investigation of known or suspected crimes, civil violations and prospective and pending civil actions.

*Id.* § 611(8) (emphasis added).

MTM argues that the term "compiled" refers only to information actually *generated* by law enforcement during an investigation, not pre-existing public records that are subsequently placed in an investigative file. The Law Court has not weighed in on the meaning of the term "compiled." However, in interpreting the federal Freedom of

---

other type of "confidential information" as defined by § 2929(1)(A)-(D) was involved.

Information Act,[4] the U.S. Supreme Court has interpreted the term "compiled" to include documents gathered for law enforcement purposes that were originally generated for some unrelated reason. *John Doe Agency & John Doe Gov't Agency v. John Doe Corp.*, 493 U.S. 146, 155 (1989). The Court reasoned that the ordinary meaning of a compilation – "something composed of materials collected and assembled from various sources or other documents" – readily applies to pre-existing materials gathered into a law enforcement file. *Id.* at 153. The Court is persuaded by this interpretation of the word "compiled" and finds that the 911 records in question were indeed compiled by the State in the course of investigation.

The only remaining issue is whether the State has established that there is a "reasonable possibility" that publicly releasing the 911 records would give rise to one of the enumerated dangers in § 614(1)(A)-(C). The Court finds that it has not done so with respect to subsections (1)(B) and (C),[5] so the issue is whether there is a reasonable possibility that publicly releasing the 911 records would "interfere with law enforcement proceedings" under subsection (1)(A).

---

[4] FOIA has the analogous exception built in directly. It specifically exempts from disclosure "records or information compiled for law enforcement purposes" when certain conditions are met (i.e., interference with enforcement proceedings, etc.). 5 U.S.C. § 552(b)(7). This language achieves the same purpose as the Criminal History Record Information Act, which has the extra step of making "intelligence and investigative information" confidential when other conditions are met, and then defines that term to mean "information *compiled* in the course of investigation . . . ."

[5] There is nothing to suggest that publishing the 911 calls would interfere with impanelling an impartial jury more so than ordinary pre-trial publicity already would, and any difficulties can be dealt with through voir dire and change of venue if necessary. Likewise, the Court finds that the callers did not volunteer private or personal information in the course of the calls, the publication of which would constitute an unwarranted invasion of privacy.

5

Date Filed __1-22-13__    __CUMBERLAND__    Docket No. ____AP-13-6____
                              County

Action ____80C APPEAL____


MAINETODAY MEDIA INC                    STATE OF MAINE


                              VS.

Plaintiff's Attorney                  | Defendant's Attorney
SIGMUND SCHUTZ ESQ                    |     WILLIAM STOKES AAG



Date of