OPINION OF THE COURT
Richard F. Braun, J.
The horrors of September 11, 2001 shall remain with those who experienced the events of that infamous day, and the traumatic scars will only slowly heal up in part. The significant effects of September 11 will continue to emanate profoundly for a long, long time.
This is a combined CPLR article 78 proceeding and declaratory judgment action brought by notice of petition and verified petition in which petitioners seek a judgment pursuant to the Freedom of Information Law (Public Officers Law art 6) declaring certain records subject to disclosure thereunder, allowing petitioners to inspect and obtain copies of the records, and awarding to petitioners litigation costs, including attorneys’ fees. Petitioners are the New York Times Company, which is the publisher of the New York Times, and Jim Dwyer (Dwyer), one of its reporters. Respondent is the agency of the City of New York responsible for fire safety and certain emergency services. On September 11, 2001, respondent sent thousands of its firefighters to the World Trade Center after the buildings were attacked by terrorists, and, of the approximately 2,700 innocent people who died there that day, 343 were firefighters.
As petitioners assert, they are seeking “release of certain materials of enormous historical importance.” Petitioner Dwyer, as a reporter for the New York Times, sent to respondent by e-mail a letter requesting various records under the Freedom of Information Law (FOIL), including:
*121 “1. All transcripts of interviews conducted by the department with members of the FDNY concerning the events of Sept. 11, 2001. (These might be called ‘oral histories.’) * * *
“3. Any and all tapes and transcripts of any and all radio communications involving any FDNY personnel on Sept. 11, starting from 8:46 AM.”
In the months following the World Trade Center tragedy, respondent conducted interviews of its personnel in order to record promptly their recollections of their experiences on September 11. According to respondent, approximately 511 oral histories have been recorded that respondent intended to be “an invaluable historical record,” and which would assist in investigations or assessments of the event. These interviews of a wide range of respondent’s employees, including officers, chiefs, high level administrative personnel, firefighters, emergency medical technicians, and paramedics were audiotaped and subsequently transcribed. These were the “oral histories.” The “tapes and transcripts of any and all radio communications involving any FDNY personnel” consist of emergency 911 telephone calls received by respondent (fire-related 911 calls are forwarded to respondent by the police department communications technicians who receive them) on September 11, its dispatch communications recorded on that day, calls from telephone operators notifying respondent’s units of the World Trade Center attacks, calls dispatching respondent’s apparatus and personnel to the scene, and reports back from units traveling to and at the World Trade Center. Respondent gives examples of (1) the content of a number of 911 emergency telephone calls from people in the World Trade Center on September 11 after the airplane attacks occurred, including from some callers on upper floors of the buildings, and (2) the gist of several of the interviews conducted after the September 11 event.
Respondent granted petitioners’ request in part and denied the request in part. The disclosure of the oral histories was denied based on their being exempt from disclosure (1) pursuant to Public Officers Law § 87 (2) (e) (i), due to the ongoing criminal prosecution of Zacarías Moussaoui, the alleged so-called 20th hijacker, (2) pursuant to Public Officers Law § 87 (2) (g), as nondiscoverable intra-agency materials, and (3) pursuant to Public Officers Law § 87 (2) (b), because the disclosure would be an unwarranted invasion of privacy under Public Officers Law § 89 (2). The request for release of tapes and *122 transcripts of radio communications was turned down on the first and third grounds above. The denials were appealed, and the appeal was granted in part and denied in part. The denials on appeal added as grounds to those of the original denials that disclosure would deprive persons of the right to a fair trial, pursuant to Public Officers Law § 87 (2) (e) (ii), and that the tapes and transcripts of radio transmissions were intraagency materials not subject to disclosure. By stipulation, respondent agreed that it does not assert that the intra-agency exemption applies “to the 911 calls from the public.” The administrative appellate decision was a final determination by respondent, and thus this proceeding ensued.
Several proposed petitioners-intervenors moved to intervene as parties in this proceeding/action, pursuant to CPLR 7802 (d), 1012, or 1013; amend the “Summons and Complaint” to add them as party petitioners; and allow them to serve their proposed verified petition; or, in the alternative, permit them to appear as amici curiae in this proceeding. By stipulation, the parties agreed to the latter relief and agreed to the “admission into the record” of the affidavits of the proposed petitionersintervenors.
The proposed petitioners-intervenors are nine persons each of whom had a husband or son who perished in the destruction of the World Trade Center on September 11. One proposed petitioner-intervenor had a firefighter son, four had husbands who worked for AON Corporation, one had a husband who was employed by Fiduciary Trust Company, one had a son employed by Cantor Fitzgerald Incorporated, and two were parents of a son who was an employee of Bloomberg, LLP attending a conference at Windows on the World at 1 World Trade Center on September 11. Each proposed petitioner-intervenor seeks to intervene in support of the petition in order to learn more information from the sought-after material as to the last moments of his or her husband’s or son’s lives.
Intervention as of right, pursuant to CPLR 1012 (b), is more limited than permissive intervention, pursuant to CPLR 1013. CPLR 7802 (d) is the most liberal in that it permits “other interested persons to intervene.” (See Matter of Greater N.Y. Health Care Facilities Assn. v DeBuono, 91 NY2d 716, 720 [1998] [internal quotation marks omitted].) However, “interested” means more than generally interested in the result of an article 78 proceeding. A person must have a legally cognizable claim to intervene under CPLR 7802 (d) as a party intervener in an article 78 proceeding (see id. at 718, 720-721; *123 Ferguson v Barrios-Paoli, 279 AD2d 396, 398-399 [1st Dept 2001]).
A party may assert a claim under FOIL in an article 78 proceeding where he or she has been denied access to a requested record after exhausting his or her administrative appeals (Public Officers Law § 89 [4] [b]). Petitioners-intervenors made no such requests, and thus brought no such administrative appeals. Therefore, they have no article 78 claim and cannot be permitted to intervene as parties to this proceeding. The parties and proposed intervenors have stipulated that they may appear before this court as amici curiae. That agreement included the admission of their affidavits before the court for consideration. Therefore, the family members have still played the important role of bringing before the court their desires to waive any right of privacy which respondent has attempted to assert on their behalf.
Under FOIL, there is “a broad standard of open disclosure” by government agencies, and documents in government possession are presumed to be discoverable, unless the agency can demonstrate that a specific statutory exemption bars disclosure (Matter of Mantica v New York State Dept. of Health, 94 NY2d 58, 61 [1999]). Exemptions under FOIL must be construed narrowly, and the government agency resisting disclosure has the burden of showing that an exemption applies (Matter of Hanig v State of N.Y. Dept. of Motor Vehicles, 79 NY2d 106, 109 [1992]).
The parties dispute the meaning of “compiled for law enforcement purposes” in Public Officers Law § 87 (2) (e). As the United States Supreme Court has held in John Doe Agency v John Doe Corp. (493 US 146, 153 [1989]) in interpreting the same words in the law enforcement provision of the Federal Freedom of Information Act, after which the FOIL clause was patterned (Matter of Fink v Lefkowitz, 47 NY2d 567, 572 n [1979]; Matter of Legal Aid Socy. v New York City Police Dept., 274 AD2d 207, 214 n 4 [1st Dept 2000]), “compiled” means the time when the reply to a FOIL request has to be performed, not when the documents are originally collected and assembled by the government agency. The law enforcement exception is to prevent, among other things, the disclosure of documents under FOIL that would interfere with either law enforcement investigations or judicial proceedings (Public Officers Law § 87 [2] [e] [i]) or would deprive a person of the right to a fair trial or impartial adjudication (Public Officers Law § 87 [2] [e] [ii]). The important point in time as to “compiling” of documents is *124 not when they are created or initially received, but when they would be gathered for disclosure under FOIL. That is the time when their disclosure would have an effect on law enforcement investigations, judicial proceedings, or a person who is to be or is being tried.
Fairness in law enforcement investigations and judicial proceedings is a fundamental principle of our democratic society. This court would not permit any improper interference with either the investigation of the claims alleged against Zacarías Moussaoui; the prosecution thereof, including the imposition of any appropriate punishment, if he is found guilty; or his right to a fair trial.
However, as stated above, respondent has the burden of demonstrating the applicability here of the law enforcement exemption to disclosure sought under FOIL. That the United States District Judge in United States of Am. v Moussaoui (2002 WL 1990900, *1, 2002 US Dist LEXIS 16542, *2 [ED Va, Aug. 29, 2002]) and rule 57 of the Rules of the United States District Court for the Eastern District of Virginia may have prohibited the prosecution and defense in that criminal prosecution from making certain disclosures to the public or press does not remove the obligation of respondent to meet its burden in this proceeding.
Respondent has not met its burden as to the claimed law enforcement exemption. The allegation of depriving persons of a fair trial was only added in a totally conclusory fashion in the administrative appellate determination of the FOIL request and is not specified in this proceeding. The claim of interference with law enforcement investigations or judicial proceedings is supported by the United States Attorney’s Office but not specifically enough. The Assistant United States Attorney states that the items requested under FOIL are potential evidence in the guilt and penalty (if there is a conviction) phases of the trial of Zacarías Moussaoui, but that it cannot be specified what tapes will be introduced into evidence at trial and what witnesses will be called in that trial. He also asserts that during any penalty phase of the Moussaoui trial, the Government intends to call as witnesses members of respondent “whose testimony will likely be similar to the content of the NYFD oral histories of these same witnesses.” He states that all of the sought-after records have been turned over to the Moussaoui defense. Respondent has not shown that there would be any harm by the disclosure sought. Respondent’s speculation that disclosure would taint the jury pool for the *125 trial is just that, speculative, especially as there has already been so much pretrial publicity as to the World Trade Center attacks and the accusations against Zacarías Moussaoui, and vigorous voir dire of the prospective jurors can weed out those who cannot serve as fair jurors.
Respondent had claimed in this proceeding that those interviewed for the oral histories were promised that their statements would be kept confidential. Respondent later stipulated that such claim was withdrawn because respondent learned that only some interviews contained such a promise. The oral histories were prepared for historical purposes, as well as to investigate and assess the response of respondent to the World Trade Center event. Personal expressions of feelings in the oral histories should not be disclosed because they do not fall under any exception of Public Officers Law § 87 (2) (g) (i)-(iv). Public Officers Law § 87 (2) (g) (i)-(iv) provide:
“2. Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that: * * *
“(g) are inter-agency or intra-agency materials which are not:
“i. statistical or factual tabulations or data;
“ii. instructions to staff that affect the public;
“iii. final agency policy and determinations;
“iv. external audits, including but not limited to audits performed by the comptroller and the federal government.”
Certain parts of the oral histories were opinions and recommendations by those interviewed. The opinions and recommendations of even lower level employees, given “as part of the consultative or deliberative process of government decision making” are exempt from disclosure under Public Officers Law § 87 (2) (g) (see Matter of Gould v New York City Police Dept., 89 NY2d 267, 277 [1996]; Matter of Xerox Corp. v Town of Webster, 65 NY2d 131 [1985]). Thus, denial of disclosure of those parts was proper. However, the factual parts of the oral histories should be disclosed.
Public Officers Law § 87 (2) (b) exempts disclosure of records under FOIL which, if they were disclosed, “would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article.” Public Officers Law § 89 (2) (b) provides:
*126 “(b) An unwarranted invasion of personal privacy includes, but shall not be limited to:
“i. disclosure of employment, medical or credit histories or personal references of applicants for employment;
“ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility;
“iii. sale or release of lists of names and addresses if such lists would be used for commercial or fund-raising purposes;
“iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it; or
“v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency; or
“vi. information of a personal nature contained in a workers’ compensation record, except as provided by section one hundred ten-a of the workers’ compensation law.”
Respondent has not shown that any of the information sought would fall under any of the specific categories of Public Officers Law § 89 (2) (b), but by the terms of the statute the list is not exhaustive.
The 911 tapes and transcripts contain communications made by people using that emergency telephone number in extreme circumstances, and for many it was the last words of their lives. Their calls for help in extremis should be protected as private utterances for the sake of both the victims who died and their surviving family members and others who cared about them (cf. New York Times Co. v National Aeronautics & Space Admin., 920 F2d 1002, 1004 [DC Cir 1990, en banc] [the court remanded the case to the District Court for a determination as to whether the tapes of the voices of the deceased members of the Challenger crew should be released by NASA under the Freedom of Information Act, and recognized the potential privacy implications of same in holding that NASA did not have to disclose any information as to a particular individual which constituted an unwarranted invasion of privacy]; see generally Matter of Dobranski v Houper, 154 AD2d 736, 737-738 [3d Dept 1989]). The same protection should be *127 afforded to those who, thankfully, survived but made their telephone calls under the same horrible circumstances.
The 911 calls made by husbands and sons of the nine families who are amici curiae should be disclosed, so that they will have the opportunity to hear their loved ones, as desired by the amici, due to their waiver of the privacy exemption. There is no privacy exemption as to the portion of the tapes and transcripts which consist of the words of dispatchers and 911 operators, and members of respondent’s units, as they were performing their jobs at the time as public employees, and thus were not entitled to any expectation of privacy for their part of the conversations (cf., Matter of Journal Publ. Co. v Office of Special Prosecutor, 131 Misc 2d 417, 424 [Sup Ct, NY County 1986] [public officials have less of a right to and expectation of privacy than do members of the public]). Respondent contended that some operators or dispatchers expressed disbelief, shock, and terror. It was the job of the operators and dispatchers to deal often with emergency circumstances, which surely can be difficult, for the operators particularly, although the magnitude of the World Trade Center event was extraordinary for the operators and dispatchers. Nevertheless, their communications are not entitled to a privacy exemption.
The portions of the operator, dispatch, and units reporting communications which consist of intra-agency material should not be disclosed. Respondent states that parts of the dispatch records include “discussions as to secure routes into Manhattan; interim discussions as to where command posts should be set up; reports establishing the process of setting up roll call; and the need to set up relay communications so units could determine what was happening elsewhere on the site.” Those are at least in part “instructions to staff that affect the public” (Public Officers Law § 87 [2] [g] [ii]), which should be disclosed, as should factual portions of the dispatch calls.
Pursuant to Public Officers Law § 89 (4) (c), the court can award reasonable attorneys’ fees and other litigation costs to a person who has substantially prevailed in a proceeding challenging the denial of a FOIL request, provided that the court determines that the record sought clearly has significant interest to the public and that the government agency lacked a reasonable legal basis for withholding the record. An award of such fees is discretionary (Matter of Powhida v City of Albany, 147 AD2d 236, 238 [3d Dept 1989]). Here, respondent had reasonable legal bases for withholding parts of the material *128 sought. Thus, attorneys’ fees and litigation costs should not be awarded to petitioners.
Freedom of access by the press and public to government information preserves a free society. Unless the government proves that there is a reason that information should be withheld, government records sought by way of a FOIL request must be provided. The press and public should be permitted to obtain as much nonexempt information as available in relation to one of the most poignant episodes of our lifetimes.
Therefore, this court declared in its separate decision and order that the following records are subject to disclosure, and respondent shall allow petitioners to inspect and copy at their expense (Public Officers Law § 87 [1] [b] [iii]) the 911 tapes and transcripts of the September 11 calls of the husbands and sons of the nine amici curiae; the tapes and transcripts of the operators, dispatchers, and units reporting portions of all other calls and communications on September 11, except for the parts that constitute intra-agency materials; and the factual portions of the oral histories. Petitioners’ request for attorneys’ fees and litigation costs was denied.